UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED NATIONAL INSURANCE COMPANY, licensed to do business in the State of Nevada,<br><br>            Plaintiff,<br><br>vs.<br><br>ASSURANCE COMPANY OF AMERICA, licensed to do business in the State of Nevada, and MARYLAND CASUALTY COMPANY, licensed to do business in the State of Nevada,<br><br>            Defendant.<br>_____<br><br>ASSURANCE COMPANY OF AMERICA, and MARYLAND CASUALTY COMPANY,<br><br>            Counterclaimants,<br><br>vs.<br><br>UNITED NATIONAL INSURANCE COMPANY and NATIONAL FIRE & MARINE INSURANCE COMPANY<br><br>            Counterdefendants.<br>_____<br><br>ASSURANCE COMPANY OF AMERICA, and MARYLAND CASUALTY COMPANY,<br><br>            Third Party Plaintiffs,<br><br>vs.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>            Third Party Defendant.<br>_____ | Case No.: 2:10-cv-01086-MMD-RJJ<br><br>**O R D E R**<br><br>(Motion for Partial Summary Judgment–#40; Counter Motion for Summary Judgment–#45) |

1    Before the Court is Defendants, Counterclaimants, and Third-party Plaintiffs
2 Assurance Company of America and Maryland Casualty Company's (collectively "Zurich")
3 **Motion for Partial Summary Judgment** (#40, filed Jan. 19, 2012). The Court has also
4 considered Counterdefendant and Third-party Defendant National Fire & Marine Insurance
5 Company's Opposition (#44, filed Feb. 13), and Zurich's Reply (#51, filed Mar. 8).
6    Also before the Court is National Fire's **Counter Motion for Summary Judgment**
7 (#45, filed Feb. 13). The Court has also considered Zurich's Opposition (#52, filed Mar. 8), and
8 National Fire's Reply (#30, filed Mar. 30).
9    On May 11, the Court granted Zurich permission to file a Sur-reply and ordered
10 National Fire to respond to the Sur-reply by May 24. (#67.) The Court, therefore, has also
11 considered Zurich's Sur-reply (#68) and National Fire's Response to the Sur-reply (#69).

## BACKGROUND

13    This dispute arises from an underlying construction defect case in Nevada State
14 Court ("State Court") and the insurance policies the parties issued to RB Peterson & Sons
15 Construction Co. Inc. ("RB Peterson"). Zurich insured RB Peterson between 2000 and 2003 under
16 various commercial general liability policies. National Fire then issued a commercial general
17 liability insurance policy that was to be effective between August 18, 2003 and August 18, 2004
18 (the "National Fire Policy"). However, RB Peterson cancelled the policy on March 17, 2004.
19    RB Peterson was later named as a defendant in a construction defect
20 lawsuit—*Abad, et al. v. Seneca Falls, LLC, et al.*, Case No. 05A514727 (the "Underlying
21 Action")—in State Court. The plaintiffs in the Underlying Action claimed damages from
22 construction defects including "improperly placed or compacted soils, improperly designed or
23 constructed walkways, driveways, slabs, pads, foundations, exterior masonry site retaining/fence
24 walls, and landscapes." (Dkt. #40, Mot. Ex. 2, Request for Judicial Notice, Ex. 6 Third Amended
25 Complaint in the Underlying Action ¶ 20 (hereinafter, the "Underlying Complaint").) RB Peterson
26 tendered its defense to both Zurich and National Fire. Zurich agreed to defend and indemnify
Peterson Construction while National Fire denied coverage based on certain provisions in its

policy. Zurich eventually settled RB Peterson's portion of the Underlying Action for $1.3 million dollars.

On July 2, 2011, United National Insurance Company ("United National"), one of RB Peterson's umbrella coverage insurers, filed suit against Zurich American Insurance Company for equitable contribution, equitable subrogation, and declaratory relief. United National later amended the complaint to name Assurance and Maryland rather than Zurich American Insurance Company, apparently Assurance and Maryland's parent company. Zurich (as Assurance and Maryland) then filed counterclaims against United National and National Fire and a third-party complaint against National Fire. The Court denied National Fire's motion to dismiss these claims. Now before the Court is Zurich's motion for partial summary judgment on the issue of National Fire's duty to defend and National Fire's motion for summary judgment on all claims. For the reasons discussed below, the Court grants Zurich's motion and denies National Fire's motion.

## DISCUSSION

**I.      Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)

(quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252.

**II.     Analysis**

"An insurance company's duty to defend and/or indemnify its insured arises from the provisions of the insurance policy."  *Allstate Ins. Co. V. Sanders*, 495 F. Supp. 2d 1104, 1106 (D. Nev. 2007).  Under Nevada law, an insurer "'bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.'"  *United National Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1158 (Nev. 2004) (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)).  "The insurer must defend any lawsuit brought against its insured which potentially seeks damages within the coverage of the policy."  *Allstate*, 495 F. Supp. 2d at

4

1106. Determining whether there is potential for coverage, and thereby a duty to defend, "is achieved by comparing the allegations of the complaint with the terms of the policy." *United National*, 99 P.3d at 1158. Any attempt to restrict policy coverage (through exclusions, etc.) must be done explicitly. *Sullivan v. Dairyland Ins. Co.*, 649 P.2d 1357, 1358 (Nev. 1982). "In particular, an insurer wishing to restrict the coverage of a policy should employ language which clearly and distinctly communicates to the insured the nature of the limitation." *Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1382 (Nev. 1984).

Zurich requests the Court find that National Fire had a duty to defend RB Peterson in the Underlying Litigation arguing that a comparison of the Underlying Complaint to the terms of the National Fire Policy show that there was a potential for coverage under the National Fire Policy. National Fire, in turn, argues that there was no potential for coverage under the National Fire Policy for four reasons: (1) the Underlying Plaintiffs alleged that property damage occurred before the inception of the National Fire Policy; (2) the Underlying Plaintiffs alleged that RB Peterson knew of the property damage prior to the inception of the National Fire Policy; (3) National Fire had no duty to defend against suits alleging property damage caused by subsidence; and (4) National Fire's "Election of Defense" endorsement and "Prior Damages" exclusion negated its duty to defend. The Court will address each of these arguments in turn.

**A.   The Timing of the Alleged Property Damage**

In essence, the Underlying Complaint[1] alleges that property damages arose out of construction defects and, possibly, from the repairs undertaken to repair the construction defects. (*See, generally* Dkt. #40, Ex. 6, Underlying Complaint.) National Fire argues that its Prior Damages Exclusion (which excludes from coverage property damage that occurred, began to occur, or was alleged to occur before the inception of the policy) excludes the damages alleged in

---

[1] The Court notes that the Underlying Complaint is not plead with any particular specificity, which leads to various plausible interpretations of what the Underlying Complaint actually alleges. However, this further supports the Court's conclusions as unspecific allegations are more likely to create a situation where coverage exists that is not immediately obvious from the complaint.

the Underlying Complaint because they arise out of the construction defects, which necessarily occurred at or before the completion[2] of the construction projects. In essence, Zurich simply argues that it is possible that the damage occurred separately and later than the construction defect.

The Court agrees that the construction defects had to exist at the time the construction projects were completed. It is axiomatic that improper construction cannot take place after the construction is over. However, this does not address when the property damage actually occurred. The Underlying Complaint states: "The defective conditions herein alleged have resulted in damaged and defective real property." This statement could refer to either property damage or diminution in value (which would not be covered by the National Fire Policy which only covers "property damage") and the possibly alleged property damage could have been an immediate consequence of the alleged defects or it could have occurred at almost any time after the completion of construction. For example, an improperly mounted chandelier could fall years after it was improperly mounted, yet the damage to the floor would not occur until the chandelier actually fell. Thus, the Court finds that just because the defects existed before the National Fire Policy incepted, it does not mean that the property damage also occurred at that time.

**B. Knowledge of the Property Damage**

National Fire also argues that the damages alleged in the Underlying Complaint are not covered under the Prior Damages Exclusion because R.B. Peterson had knowledge of the alleged defects and resulting damage prior to the inception of the National Fire Policy. The Court disagrees that this is a necessary or the only interpretation of the Underlying Complaint's language. The Underlying Complaint states: "the defective conditions were known *or through*

---

[2] The Court assumes for the purpose of this order, without determining whether the Nevada Supreme Court would so hold, that an insurer may go beyond the four corners of a complaint to matters of public record in making its coverage/duty to defend determination. *See OneBeacon Ins. Co.*, 2009 WL 2407705 at *8 n.4 (D. Nev. Aug. 3, 2009) (explaining that while Nevada has not addressed the issue, other jurisdictions that apply the complaint rule to duty to defend determinations recognize certain exceptions to the rule). Thus, the Court will not address the propriety of National Fire discovering the escrow and completion dates of the properties at issue in the underlying matter.

1  *reasonable diligence and experience with the construction should have been known* to Defendants
2  . . . at the time of substantial completion of construction . . ." and "[t]hroughout the time period
3  beginning with the completion of construction of the Subject Properties, and continuing to the
4  present, the Defendants, including DOES, and each of them, made repairs and/or representations
5  that repairs would be made to the defective conditions at the Subject Properties." (Dkt. #40, Ex. 6,
6  Underlying Complaint ¶¶ 21-22) (emphasis added.)

7  The Court reiterates, these paragraphs at most refer to alleged construction defects,
8  not any property damage that may have arose from those defects.  Thus, R.B. Peterson may have
9  been fully aware of some alleged defect and yet no property damage may yet have occurred, *i.e.*,
10 R.B. Peterson may only have been aware of a heightened potential for property damage because of
11 a particular construction defect.  Further, the Court finds that the language "DOES, and each of
12 them" is too ambiguous, especially considering the "should have known" language from the prior
13 paragraph, to say with any degree of certainty that R.B. Peterson actually knew of any specific
14 defects, much less property damage.  Further, even assuming that R.B. Peterson knew of any
15 alleged defects and even assuming that it either promised to make or made certain repairs to
16 particular construction defects, there is still the potential for coverage because property damage
17 may have arisen from the repairs themselves which were apparently ongoing (by the contractor
18 and/or sub-contractors) at the time the Underlying Plaintiffs filed the Underlying Complaint.

19     **C.**    **Subsidence**

20 The "Subsidence Exclusion" in the National Fire Policy excludes from coverage
21 any damages "arising out of, resulting from, caused, aggravated or contributed to, directly or
22 indirectly by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding,
23 mud flow, rising, tilting, or any other movement of land or earth." (Dkt. #40, Ex. 14, National Fire
24 Policy at NFM000013.)  National Fire argues that because R.B. Peterson was alleged to have
25 provided the "rough grading and earthwork services" and that some of the construction defects
26 were "improperly placed or compacted soils," the Subsidence Exclusion applies to any alleged

property damage.  National Fire reads the Subsidence Exclusion more broadly than does the Court.  Because insurance policies are contracts of adhesion, courts interpret ambiguous provisions in favor of providing coverage.  *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).  Whether a provision is ambiguous depends on whether "'it creates reasonable expectations of coverage as drafted.'" *Id.* (quoting *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004)).  "Ultimately, a court should interpret an insurance policy to 'effectuate the reasonable expectations of the insured.'" *Id.* (quoting *Nat'l Union Fire Ins. v. Reno's Exec. Air*, 682 P.2d 1380, 1383 (Nev. 1984).

The Court finds that the Subsidence Exclusion is ambiguous.  Generally, subsidence exclusions are meant to protect insurers from disasters that affect wide swaths of people and businesses such as earthquakes, floods, and other major disasters.  *See id*. at 673.  Here, the Subsidence Exclusion lists multiple naturally occurring types of earth movement and throws on the "any other movement of land or earth" language.  However, it would be unreasonable to conclude that R.B. Peterson, a grading contractor that moves land as its business, would consider this language to exclude all of its grading and construction work (and resulting damage) to be excluded from the insurance policy it purchased.  If so, it would have been entirely illogical to purchase the policy in the first instance.  Therefore, this could not have been R.B. Peterson's intention (or National Fire's original intention for that matter, assuming it dealt with R.B. Peterson in good faith).  Since the Subsidence Exclusion is ambiguous, the Court interprets the exclusion narrowly to apply only to "naturally occurring events," *id.*, and not to damages caused by R.B. Peterson's work on the construction project.  Thus, the Subsidence Exclusion does not negate the possibility of coverage under the National Fire Policy.

/

/

/

/

**D.     The "Election of Defense" Endorsement and "Prior Damages" Exclusion**

National Fire's Election of Defense endorsement[3] (Dkt. #40, Ex. 14, National Fire Policy at NFM000048) and a portion of its Prior Damages Exclusion[4] are escape clauses void as against public policy.  In fact, these are both extreme examples of escape clauses.  Not only do the endorsements "eliminate National Fire's duty to defend in the event another insurance carrier takes up the insured's defense (as was the case here), National Fire's endorsement[s] eliminate[] its duty to defend even when an insured merely requests a defense from another insurer." *McClain v. Nat'l Fire & Marine Ins. Co.*, 2:05-cv-00706-LRH-RJJ, 2008 WL 5501105 at *5 (D. Nev. June 23, 2008).  Thus, for example, an insured who has paid its premiums would lose its coverage from National Fire if it mistakenly requested another insurer to defend a suit that the other insurer did not cover even though National Fire would otherwise have been required to provide coverage.

---

[3] This endorsement, M-5077 (Election of Insurance Carrier for Defense), reads as follows:

> If any insured believes that more than one insurance company may have the duty to defend a "suit" for which coverage is provided under this Policy, that insured must elect in writing either to request us to defend the insured or to request one or more other insurance companies to defend the insured with regard to that "suit".
>
> We have the option, but not the duty, to defend any "suit" if an insured has requested another insurance company or companies to defend the "suit" in whole or in part, regardless of whether such request has been accepted or accepted under a reservation of rights. We may request the insured to warrant that it has not requested and will not request another insurance company to defend the "suit" in whole or in part as a condition precedent to our defending the "suit".
>
> If we are providing a defense for any insured to any "suit", including a defense under reservation of rights, and that insured or any other insured requests the defense of such "suit" in whole or in part by any other insurance carrier, regardless of whether such insurance carrier agrees to provide a defense or agrees to provide a defense under reservation of rights, then our duty to defend ends and we shall have the right, but not the obligation, to withdraw from any further participation in the defense of that "suit".

[4] This endorsement, M-5076 (Exclusion of Damages Commencing Prior to Policy Period Broad Form Exclusion), reads as follows:
> If any insured requests an insurance company, including us, to defend, pay or indemnify any amount or otherwise respond to any claim or "suit" under any insurance policy incepting prior to the first day of the policy period of this Policy, this Policy shall not apply to damages sought in that claim or "suit".

1  This could happen because of a mere mistake on the insureds part or because the plaintiff misstates
2  a date in the complaint and later amends or the facts turn out to be different than the plaintiff
3  originally believed.  Given the fundamental nature of the duty to defend, the Court cannot and will
4  not enforce such provisions.  *See N. American Bldg. Maint., Inc. v. Fireman's Fins Ins. Co.*, 40
5  Cal. Rptr. 3d 468, 475 (Cal. Ct. App. 2006) ("It has long been a fundamental rule of law that an
6  insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads,
7  facts giving rise to the potential for coverage under the insuring agreement.");[5] *see also McClain* at
8  *5.  "An 'insured's desire to secure the right to call on the insurer's superior resources for the
9  defense of third party claims is, in all likelihood, typically as significant a motive for the purchase
10 of insurance as is the wish to obtain indemnity for possible liability.'" *Pruyn v. Agric. Ins. Co.*, 42
11 Cal. Rptr. 2d 295, 302-03 (Cal. Ct. App. 1995).

12 National Fire argues that Zurich should be prevented from making public policy
13 arguments because the same public policy meant to protect insureds does not apply when the
14 dispute exists between insurers.  The Court is not persuaded.  A void provision is void, not
15 voidable and the public policy against escape clauses such as this is that such clauses should not
16 exist in insurance contracts, not that they should only be voided under particular circumstances.
17 Thus, the Court declares these provisions void and will not apply them to eliminate National Fire's
18 duty to defend R.B. Perterson.

19 **E.    Summary**

20 In sum, the Court finds that none of National Fire's four proffered reasons why it
21 did not owe a duty to defend to R.B. Peterson is valid.  Thus, the Court finds that National Fire
22 owed R.B. Peterson a duty to defend it.  Accordingly, the Court grants Zurich's motion for

---

[5] National Fire's argument that it is free to contract around general rules, *Benchmark Ins. Co. v. Sparks*, 524 P.3d 617, 620-21 (Nev. 2011), misses the fact that certain contractual provisions may still be void as against public policy.  This Court agrees with Judge Hicks in *McClain* and finds that escape clauses, particularly ones this extreme, are simply void.

AO 72
(Rev. 8/82)

summary judgment on the issue of National Fire's duty to defend and denies National Fire's counter motion.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Zurich's Motion for Partial Summary Judgment (#40) is GRANTED.

IT IS FURTHER ORDERED that National Fire's Motion for Summary Judgment (#45) is DENIED.

Dated: May 29, 2012.

_____
**ROGER L. HUNT
United States District Judge**